IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL LUCIDONIO | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. RDB-07-191 |
| LISA J. W. HOLLINGSWORTH | * | |
| DR. RALPH NEWMAN | | |
| DR. LISA MOORESHEAD | * | |
| JODI SMITH, D.T.S. | | |
| DR. MOHAMMAD MOUBAREK | * | |
| RICHARD SHOOK | | |
| DIANE WILLIAMS | * | |
| DR. ALEXA MATASON | | |
| In their official and individual capacities | * | |
| Defendants | | |

\*\*\*\*\*

**MEMORANDUM OPINION**

**I. Background**

This civil rights action for damages invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, and raises claims of due process and equal protection violations, Eighth Amendment deliberate indifference, and medical negligence under the Federal Tort Claims Act ("FTCA") related to: (1) the care and treatment received for Plaintiff's Hepatitis C ("HCV") and mental health conditions; (2) Plaintiff's removal from the Residential Drug Abuse Program ("RDAP"); and (3) the inappropriate denial of Plaintiff's family visits. All claims arise out of Plaintiff's confinement at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland") over the course of a fifteen-month period from February of 2006 to May 18, 2007, prior to Plaintiff's transfer to the Federal Correctional Institution in Fairton, New Jersey ("FCI-Fairton").[1]

---

[1]   Plaintiff was released from U.S. Bureau of Prisons ("BOP") confinement on June 15, 2007.

**II. Pending Motions**

Defendants have filed a Motion to Dismiss or for Summary Judgment which remains unopposed as of the within signature date.[2]   (Paper No. 18.)  Oral hearing is deemed unnecessary. *See* Local Rule 105.6. (D. Md. 2004).   For reasons to follow, Defendants' Motion shall be GRANTED.

**III. Standard of Review**

Motion to Dismiss

The purpose of a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), is to test the sufficiency of a plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require that appearance, beyond a doubt, that plaintiff can prove no set of facts in support of a claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

---

[2]   Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (1975), on June 25, 2006 the Clerk informed Plaintiff that Defendants had filed a dispositive motion, that Plaintiff had 17 days in which to file written opposition to the motion, and that if Plaintiff failed to respond, judgment could be entered against him without further notice. *See* Paper No. 19. On July 10, 2007, the notice was re-mailed to Plaintiff at his new address.  *See* Paper No. 20 & 21.  Plaintiff has chosen not to respond.

Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc*., the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec*. *Indus*. *Co*.

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

With these standards in mind, the Court will review Plaintiff's claims based upon the unopposed record before the Court.

**IV.   Analysis**

HCV Treatments

Plaintiff was serving a 36-month term of imprisonment for conspiracy, foreign counterfeit currency, and possession of counterfeit currency, in violation of 18 U.S.C. §§ 371, 471, and 472. While incarcerated at the Federal Correctional Institution in Fairfield, Connecticut during 2005-2006, medical staff determined that Plaintiff had been exposed to HCV. A series of blood tests and lab work was conducted between March of 2005 and February of 2006, at which time Plaintiff was transferred to FCI-Cumberland. While test results, including HCV genotyping, indicated that Plaintiff had been exposed to HCV, FCI-Cumberland Clinical Director Dr. Mohamed Moubarek found no evidence of acute HCV problems and no evidence of end-stage liver disease or cirrhosis. He decided to monitor Plaintiff's condition rather than take steps to initiate immediate intervention

with Interferon as:[3] (1) Plaintiff's condition was not critical; (2) Interferon has serious side effects requiring close monitoring over a treatment period of up to a year and a half; and (3) within a ten-month period Plaintiff was going to be transferred from a prison to a halfway house where there was no on-site medical staff.

In June of 2006, Plaintiff submitted a request for a liver biopsy and treatment for HCV. He was informed that he did not meet the clinical practice guidelines for HCV treatment, but staff would continue to monitor his condition. Soon after, Dr. Moubarek was informed that Plaintiff had decided to delay his placement at a halfway house in favor of receiving Interferon treatment. On July 6, 2006, Plaintiff was evaluated for same. His medical chart was examined and Dr. Moubarek concluded that if Plaintiff cleared initial screenings, *e.g.,* mental health evaluation and liver biopsy, he would require six months of treatment with Interferon. On July 18, 2006, an evaluation was conducted by a prison psychologist who determined that there was no mental health condition that would preclude the Interferon treatment, although Plaintiff had serious mental health issues that should be considered when evaluating him for the treatment. She further recommended that if treatment was provided, Plaintiff should be monitored regularly by staff to identify mental health problems.

Plaintiff underwent a liver biopsy on August 11, 2006. The results were reviewed on September 11, 2006, and the case was submitted to the Central Office, Health Services Division, for clearance. Interferon treatment was approved. On September 27, 2006, Plaintiff's Interferon treatment began. Due to his failure to show up for "pill line" in the FCI-Cumberland dispensary,

---

[3] The Interferon treatment regimen includes both a weekly injection and daily oral doses of Ribavirin. According to Defendants, it is similar to chemotherapy in that it is toxic to the body and can suppress bone marrow and reduce white blood cell counts. The regimen must be closely monitored. It is a one-time treatment and the success rate is 75% if the patient is fully compliant with the medication.

Plaintiff missed receiving a number of his Ribavirin medications. Nonetheless, by January 3, 2007, Plaintiff's HCV viral load had been suppressed. He completed the 24-week treatment plan on March 12, 2007, and was advised to follow up with community medical resources once he left prison.

Where, as here, Plaintiff presents civil rights claims challenging care for his HCV, he must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Assuming Plaintiff's HCV exposure satisfies this first element, he must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison medical personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[4] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

Based upon examination of the unopposed materials, the Court finds that Plaintiff has failed to present any facts raising any genuine issue of material fact with respect to his constitutional claim

---

[4] "[A]ny negligence or malpractice on the part of....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d at 166. Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

against the Defendants with regard to his treatment for HCV.[5]  Clearly he was tested and evaluated for Interferon treatments within months of his arrival at FCI-Cumberland.  As noted by Defendants, the decision to approve and provide such treatment must be carefully made as such treatments are toxic and can affect a patient's psychological condition. After proper evaluation by medical and mental health staff, Plaintiff was provided the Interferon treatment he sought in this suit, resulting in the suppression of his HCV viral load.   That Plaintiff was not provided the treatment at FCI-Cumberland as soon as requested does not amount to a claim of deliberate indifference under the Eighth Amendment.[6]  While prisoners have a right to medical care, they do not have a right to choose a specific type of treatment and to receive same at the time of their choosing.[7]

Mental Health Treatment, Removal from RDAP Program, and Denial of Visitation

---

[5]     To proceed under the FTCA, a claimant cannot file a lawsuit unless he has first presented an administrative claim to the appropriate federal agency and it has been finally denied or the agency has not made a final determination after the passage of six months.  See 28 U.S.C. § 2675(a).  Compliance with the administrative claim process is a jurisdictional prerequisite to suit under the FTCA.  See Kokotis v. United States Postal Service, 223 F. 3d 275, 278 (4th Cir. 2000).  Plaintiff has raised a claim of medical negligence with regard to his HCV treatment.  He does not refute Defendants' argument that he never presented an administrative tort claim to the BOP regarding this FTCA allegation.  Therefore, the claim shall be dismissed for failure to exhaust.

[6]     Plaintiff levels an equal protection claim, but does not indicate how he was treated differently than others in similar circumstances.  Equal protection principles require generally that government officials behave in a way such "that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  To succeed on an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); see also Washington v. Davis, 426 U.S. 229, 239-42 (1976); Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002).  Plaintiff's claim is presented as a naked assertion.  He must go beyond mere conclusory assertions that a particular action was taken or not taken with discriminatory animus.  See Chapman v. Reynolds, 378 F.Supp. 1137, 1139 (W.D. Va. 1974).

[7]    A prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that they chose this course in conscious disregard of an excessive risk to the prisoner's health. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff takes issue with the change in his psychological medications and the short duration of the televideo-psychiatry consults with Dr. Newman.[8] He further challenges his removal from the BOP RDAP program[9] and the denial of visitation. Defendants argue, and it is not refuted, that these claims should be dismissed due to Plaintiff's failure to exhaust his administrative remedies.[10]

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a

---

[8] The record shows that throughout his confinement at FCI-Cumberland, Plaintiff was treated for mental health issues unrelated to his HCV, *e.g.*, depression and anxiety. Specifically, he was seen by Staff Psychiatrist Ralph Newman, who deemed it appropriate for Plaintiff to consult with on-site staff. On November 13, 2006, however, Plaintiff was evaluated by FCI-Cumberland's Chief Psychologist Morshead due to Dr. Moubarek's concerns that Plaintiff may have been experiencing increased depression as a result of the Interferon treatment. Dr. Morshead found that while Plaintiff's mental health condition was persistent, it had not worsened. She recommended that the Interferon treatment be continued and it was.

[9] Defendants claim that on July 19, 2006, Plaintiff was removed from the RDAP program because he had violated program confidentiality and because he had failed to adhere to the conduct rules and regulations of the program due to his disruptive and problematic behavior.

[10] This complaint falls under the exhaustion prerequisites of § 1997e(a), and Plaintiff's mental health, RDAP, and visitation claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). The fact that Plaintiff was released from BOP confinement does not affect the exhaustion requirement because the applicability of § 1997e(a) is dependent on the date this case was filed. *Id.* at 527, n. 5.

heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The requirement for exhaustion of administrative remedies can be either statutorily or judicially imposed. Statutory exhaustion requirements are mandatory, while the judicial, or common-law, exhaustion doctrine is discretionary and includes a number of exceptions. *See Beharry v. Ashcroft*, 329 F.3d 51, 56-57 (2$^{d}$ Cir. 2003). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court expressly found that Congress had statutorily mandated exhaustion under 42 U.S.C. § 1997e(a) and "we will not read futility or other exceptions into statutory exhaustion requirements...." *Id*. at 741.

Prior to filing this case, Plaintiff did not exhaust his remedies with regard to his mental health care, visitation, and removal from the BOP residential drug treatment program. Therefore, Defendants' Motion to Dismiss shall be granted as to these claims.

**V. Conclusion**

For the aforementioned reasons, Defendants' Motion to Dismiss or for Summary Judgment shall be GRANTED. A separate Order follows.

Date: December 10, 2007

/s/
_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE